Law Offices of Avrum J. Rosen, PLLC
*Attorneys for Debtor-In-Possession*
38 New Street
Huntington, New York 11743
(631) 423-8527
Avrum J. Rosen

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------x

In re:                                                                    Chapter 11 (Subchapter V)

      RACHEL ONE HOLDING INC.,                    Case No.: 23-42184-ess

                        Debtor.

--------------------------------------------------------x

## <u>DEBTOR'S AMENDED PLAN OF REORGANIZATION</u>

**LAW OFFICES OF AVRUM J. ROSEN, PLLC**
*Counsel to RACHEL ONE HOLDING INC.,*
*Debtor and Debtor-in-Possession*

Avrum J. Rosen, Esq.
Alex Tsionis, Esq.

38 New Street
Huntington, New York 11743

Telephone: (631) 423-8527

arosen@ajrlawny.com
atsionis@ajrlawny.com

Dated:
April 23, 2024

# INTRODUCTION

RACHEL ONE HOLDING INC., the Debtor and Debtor-in-Possession, proposes the following Amended Chapter 11 Plan of Reorganization ("Plan").

This Plan includes: (a) a brief history of the business operations of the Debtor: (b) a liquidation analysis: (c) an appraisal of the Debtoer's Real Property; and (d) projections with respect to the ability of the Debtor to make payments under the Plan.

This Plan is a contract between the Debtor and all of its creditor constituencies. It provides the mechanism, timing, and details of all treatment and payment of creditor claims. It is the blueprint for the Debtor's emergence from bankruptcy as a stronger and viable entity. The information contained in this document is designed to provide creditors and interest holders of the Debtor with information to enable them to make an informed judgment concerning the method by which the Debtor plans to reorganize and emerge from bankruptcy. **If the Bankruptcy Court confirms the Plan, it will be binding on the Debtor, its creditors, and other interested parties.**

This Plan provides for a comprehensive reorganization of the Debtor to preserve its going concern value and future business. Under this Plan, the Debtor will (i) pay all of its Administrative Claims in full on the Effective Date of the Plan and (ii) pay Allowed Priority Tax Claims pursuant to the time permitted in 11 U.S.C. §507(a)(8) together with statutory interest over 5 years, (iii) pay other Priority Claims in full in equal monthly payments over three (3) years, (iv) cure any monetary defaults in Assumed Executory Contracts and pay them according to their terms, and modify the Allowed Secured Claim on the Debtor's Real Estate and (v) make distributions to each of its Allowed General Unsecured Creditors pro rata over three years with quarterly distributions of its disposable income.

The Debtor believes this Plan satisfies the primary goal of Chapter 11, which is to enable the Debtor to reorganize, restructure, and emerge as a liquidating business that pays all of its unsecured creditors pro rata over three (3) years. The Debtor submits that this Plan will accomplish these goals and that Confirmation of the Plan will provide the best possible return to Holders of Claims and is in the best interests of the Debtor, its Creditors, and members.

# DEFINITIONS

The following terms have the respective meanings specified below, except as expressly provided in other sections of the Plan, unless the context otherwise requires (such meanings to be equally applicable to both the singular and plural, and masculine and feminine, forms of the terms defined). Any capitalized term used in the Plan but not defined herein that is used in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules.

**Administrative Claim**: A Claim for any expense Allowed under Bankruptcy Code §§ 503(b), 507(b), or 546(c)(2) and entitled to priority under Bankruptcy Code § 507(a)(2), including: (a) fees payable under 28 U.S.C. § 1930; (b) actual and necessary costs and expenses incurred in the ordinary course of the Debtor's business; (c) actual and necessary costs and expenses of

preserving the Estate or administering the Chapter 11 Case; and (d) all Professional Fee Claims to the extent Allowed by Final Order under Bankruptcy Code §§ 330, 331, or 503.

**Administrative Claims Bar Date**: For all Administrative Claims except Professional Fee Claims, the first business day that is 15 days following the Effective Date, unless the Bankruptcy Court has entered an order setting an earlier Administrative Claims Bar Date.

**Allowed**: Means, with respect to any Claim, against the Debtor, (a) any Claim against the Debtor that has been listed by the Debtor in the Schedules (as such Schedules may be amended from time-to-time in accordance with Bankruptcy Rule 1009) as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed or no timely objection to allowance or request for estimation has been interposed, (b) any timely filed proof of Claim as to which no objection has been or is interposed in accordance with the Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder of such Claim, (c) any Claim expressly allowed by a Final Order or under the Plan "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Claim from and after the Petition Date, (d) any Claim or any portion thereof that the Debtor has assented to the validity of or that has been expressly allowed under the Plan or (e) that is agreed to by the Debtor or Reorganized Debtor and the holder of such Claim.

**Allowed […] Claim**: An Allowed Claim in the particular Class or category specified.

**Appraisal**: The Appraisal obtained by the Debtor of the Property, dated February 8, 2024 for the sum of $3,450,000.00, which is annexed hereto as Exhibit "A".

**Assume:** The act of seeking authority from the Bankruptcy Court to Assume (or reject) an Executory Contract pursuant to the terms of 11 U.S.C. §365 of the Bankruptcy Code.

**Bankruptcy Code**: Title 11 of the United States Code as of the Petition Date.

**Bankruptcy Court**: The United States Bankruptcy Court for the Eastern District of New York, which has jurisdiction over the Chapter 11 Case or in the event such court ceases to exercise jurisdiction over this Chapter 11 Case, any other court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case.

**Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

**Bar Date**: The date fixed by order of the Bankruptcy Court as the date by which all proofs of claim with the exception of those asserted by governmental entities (as defined in the Bankruptcy Code) were required to be filed against the Debtor. The Bar Date for non-governmental claims was March 1, 2024. The Bar Date for Governmental claims is June 14, 2024.

**Business Day**: Any day, excluding Saturdays, Sundays, and "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open forbusiness in New York City.

**Cash**: Currency, checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, negotiable instruments, and wire transfers of immediately-available funds.

**Chapter 11 Case**: The case under chapter 11 of the Bankruptcy Code for the Debtor pending before the Bankruptcy Court under Case Number 23-42184-ess.

**Claim**: A claim against the Debtor or its property as defined in Bankruptcy Code § 101(5).

**Claimant**: An entity that holds a Claim against the Debtor that arose at the time ofor before the Petition Date, or an entity that has a Claim against the Bankruptcy Estate of a kind specified in Bankruptcy Code §§ 348(d), 502(f), 502(g), 502(h), or 502(i).

**Claim Objection Deadline**: The first Business Day that is ninety (90) days after the Effective Date.

**Claims Reconciliation Process**: The process to reconcile all Claims assertedagainst the Debtor with the Debtor's books and records, including any objections to Claims filed by the Debtor, which the Debtor will commence within thirty (30) days after the Bar Date.

**Class**: A category consisting of holders of Claims or Interests substantially similar innature to the Claims or Interests of other holders placed in that category, asdesignated in Article V of the Plan pursuant to Bankruptcy Code § 1122.

**Confirmation Date**: The date the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

**Confirmation Hearing**: The hearing held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**Confirmation Order**: The order confirming the Plan in accordance with the provisions of the Bankruptcy Code.

**Counsel for the Debtor**: Avrum J. Rosen, Esq. of the Law Offices of Avrum J. Rosen, PLLC, 38 New Street, Huntington, New York, 11743, T: (631) 423-5827, arosen@ajrlawny.com, npizzo@ajrlawny.com are the counsel for the Debtor.

**Cure**: The payment of Cash by the Debtor, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to cure monetary defaults under an Executory Contract, Mortgage or Unexpired Lease of the Debtor and to permit the Debtor to assume that contract or lease under § 365(a) of the Bankruptcy Code.

**Debtor**:  RACHEL ONE HOLDING INC.

**Debtor-in-Possession**: The Debtor, during the period commencing on the Petition Date and ending on the Effective Date.

**Disallowed**: A Claim as to which a Final Order has been entered disallowing the Claim or a portion thereof.

**Disputed**: Means, as to any Claim (or portion thereof) or Interest against the Debtor, a Claim or Interest that is not an Allowed Claim or Interest and (a) is listed on the Schedules as disputed, unliquidated, or contingent, (b) is filed pursuant to Bankruptcy Code § 501(a) as unliquidated or contingent, or (c) as to which the Debtor or any party in interest with standing, has interposed a timely objection or request for estimation or subordination in accordance with the Bankruptcy Code and the Bankruptcy Rules that has not been determined by Final Order.

**Distribution**: A payment to the Holder of an Allowed Claim.

**Distribution Date**: A date on which a Distribution occurs, which shall be ten (10) days after the Effective Date and monthly thereafter, for a total period of three (3) years.

**Effective Date**: The date on which this Plan shall take effect, which date shall be a Business Day on or after the Confirmation Date on which all conditions precedent to the effectiveness of this Plan specified in this Plan have been satisfied, or, if capable of being waived, waived, which date shall be specified in a notice filed by the Reorganized Debtor with the Bankruptcy Court.

**Estate**: The bankruptcy estate of the Debtor created pursuant to section 541 of the Bankruptcy Code.

**Exculpated Parties**: Each of the following solely in their capacity as such: (a) the Debtor, (b) the Reorganized Debtor, (c) the Debtor's and Reorganized Debtor's directors, officers, employees, advisors, and agents, (d) the Subchapter V Trustee, and (e) the Professionals involved in this Chapter 11 Case and in the negotiation, implementation, and execution of the Plan and the Settlement Agreement, and counsel to those parties.

**Executory Contract**: Any contract or agreement to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

**Final Decree**: An order entered by the Bankruptcy Court closing the Chapter 11 Case.

**Final Order**: An order as to which the time to appeal, petition for *certiorari*, or move for re-argument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for re-argument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, move for re-argument, or rehearing shall have been waived in writing or, in the event an appeal, writ of *certiorari*, or re-argument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or *certiorari* has been denied, or from which re-argument or rehearing was sought, and the time to take any further appeal, petition for *certiorari*, or motion for re-argument or rehearing shall have expired; *provided, however*, the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of

Civil Procedure, or any analogous rule underthe Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

**Forebearance Agreement:** The agreement between the prior owner of the Property and the Debtor, as amended.

**General Unsecured Claim**: Any Claim against the Debtor existing as of the Petition Date other than a Secured Claim, Administrative Claim, Priority Tax Claim or Other Priority Claim.

**Governmental Bar Date**: The last day upon which governmental entities may file proofs of claim, which shall be determined by this Court.

**Holder**: A Person holding a Claim or any authorized agent who has completed, executed, and delivered a Ballot in accordance with the applicable voting instructions.

**Impaired**: Means impaired within the meaning of sections 1124 and 1191 of the Bankruptcy Code.

**Initial Distribution Date**: Thirty (30) days after the Effective Date.

**Insider**: Insider shall have the meaning ascribed to it in Bankruptcy Code § 101(31).

**Insurance Policy**: Any issued policy of insurance and any agreements relating thereto covering the Debtor, the Debtor's Estate, or its assets, directors, officers, members, managers, employees and fiduciaries, or that may be available to provide coverage for Claims against the Debtor or any of the foregoing, including without limitation any general liability, property, workers compensation, casualty, umbrellaor excess liability policy(ies), errors and omissions, director and officer or similar executive, fiduciary, and organization liability policy(ies) (A, B, or C coverage), and any tail with respect thereto.

**Landlord**: means the Debtor.

**Lender:** means Richmond 91st LLC, the mortgagee with a lien on the Property.

**Lease**: The Existing lease between the Debtor and KISS Entertainment for the lower level of the Debtor's Property, which is subject to assumption or rejection pursuant to 11 U.S.C. §365.

**Liquidation Value**: The amount realizable if the Debtor's assets were sold and liquidated under Chapter 7 of the Bankruptcy Code. A copy of the appraisal of the Debtor's physical assets is annexed hereto as Exhibit "A".

**Notice Parties**: Counsel to the Debtor, the Subchapter V Trustee and the U.S. Trustee and any creditor or party in interest that has appeared in this Case or who have their Claims listed in the schedules or whom have filed Claims, or who are parties to the Settlement Agreement.

**Person**: An individual, corporation, partnership, limited liability company (including its members), joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity

**Petition Date**: June 22, 2023, the date upon which the Debtor filed its voluntary Chapter 11 bankruptcy petition.

**Plan**: This plan and all exhibits hereto, either in its present form or as may be altered, amended, modified, or supplemented from time to time proposed by the Debtor pursuant to Sections 1190, 1191, and 1129 of the Bankruptcy Code and the Bankruptcy Rules.

**Plan Supplement**: Any supplement to this Plan and/or any Exhibits thereto to be filed by the Debtor as permitted herein on or before the Plan Supplement Filing Date.

**Plan Supplement Filing Date**: The date on which the Plan Supplement is filed, which shall be fourteen (14) days prior to the date set by the Court for the Confirmation Hearing.

**Priority Claims**: All Priority Non-Tax Claims and Priority Tax Claims.

**Priority Non-Tax Claims**: Those claims afforded priority under Bankruptcy Code § 507(a) other than Administrative Claims and Priority Tax.

**Priority Tax Claims**: Those claims afforded priority under Bankruptcy Code §§ 502(i) or 507(a)(8).

**Property:** means the Debtor's real property located at 130-35 91st Avenue, Richmond Hill, NY 11418, Block 9358, Lot 39.

**Pro Rata Share**: The proportionate share of a distribution calculated by dividing proportionately among the Allowed Claims in a Class according to the aggregate amount of the Allowed Claims in such Class and the total amount of any Distribution to be made to that Class.

**Professional**: Those persons (a) retained pursuant to an order of the Bankruptcy Court in accordance with Bankruptcy Code §§ 327, 1103, and/or 1106 and to be compensated for services rendered prior to the Effective Date pursuant to Bankruptcy Code §§ 327, 328, 329, 330, and/or 331; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Bankruptcy Code §§ 330 and 503(b)(2).

**Professional Fee Bar Date**: The first Business Day that is 30 days after the Effective Date.

**Professional Fee Claim**: To the extent Allowed pursuant to a Final Order of the Bankruptcy Court, (a) a claim under Bankruptcy Code §§ 327, 331, 503(b), 1103, or 1106 for compensation for professional services rendered or expenses incurred prior to the Effective Date on the Estate's behalf; by a Professional, which, for this purpose includes the Subchapter V Trustee and (b) a claim under Bankruptcy Code § 503(b)(4) for compensation for professional services rendered.

**Released Parties**: (a) the Debtor and the Debtor's Estate; and (b) with respect to the entities or persons identified in subsections (a), each of such entities or persons' respective predecessors, successors, and assigns, and respective current and former affiliates, subsidiaries, employees, agents, officers, directors, managers, trustees, members, retained professionals, representatives, advisors, retained attorneys, financial advisors, accountants, investment bankers, and consultants and all parties released pursuant to the terms of the Settlement Agreement.

**Releasing Parties**: All Persons who have held, hold, or may hold Claims, Rights of Action, causes of action, or liabilities that are subject to compromise and settlement pursuant to the terms of the Plan or are otherwise discharged, satisfied, stayed, or terminated pursuant to the Plan and the Settlement Agreement.

**Reorganized Debtor**: The Debtor upon and after the Effective Date of this Plan.

**Rights of Action**: Any and all actions, claims, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, including actions brought prior to the Petition Date, actions under chapter 5 of the Bankruptcy Code, and actions against any Person or entity for failure to pay for products or services provided or rendered by the Debtor, all claims, suits or proceedings relating to enforcement of the Debtor's contract rights, including patents, copyrights and trademarks, and all claims or causes of action seeking recovery of the Debtor's or the Reorganized Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of theDebtor's or the Reorganized Debtor's businesses, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the courseof the Chapter 11 Case, including through the Effective Date.

**Schedules**: The Debtor's schedules of assets and liabilities, statements of financial affairs, and such other schedules in accordance with Bankruptcy Code § 521 filed by the Debtor with the Bankruptcy Court, as amended.

**Tenant:** means Kiss Entertainment, the tenant under the Lease.

**Unsecured Claim**: Any Claim that is not an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim, a Secured Claim, or a Priority Non-Tax Claim.

**U.S. Trustee**: The Office of the United States Trustee for the Eastern District of New York, Alexander Hamilton Custom House, One Bowling Green, Suite 534, New York, NY 10004, T: 212-510-0500 F: 212-668-2361.

**Unexpired Lease**: A lease of nonresidential real property to which Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**Unimpaired**: Means, with respect to a Class of Claims or Interests, such Class is not Impaired.

**Voting Deadline**: The date by which a Claimant must deliver a ballot to accept or reject this Plan relating to the solicitation of votes with respect to this Plan.

## RULES OF INTERPRETATION AND CONSTRUCTION

**A.     Generally**. For purposes of the Plan: (i) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (ii) unless otherwise specified, all references in the Plan to Sections, Articles, and exhibits are references to Sections, Articles, and exhibits of or to the Plan; and (iii) the rules of construction set forth in section 102 of the Bankruptcy Code and the Bankruptcy Rules shall apply unless superseded herein or in the Confirmation Order.

**B.     Time Periods**. In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**C.     Miscellaneous Rules**. (i) The words "herein," "hereof," "hereunder," and other words of similar import refer to the Plan as a whole, not to any particular Section, subsection, or clause, unless the context requires otherwise; (ii) whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine, and the neuter; and (iii) captions and headings to Articles and Sections of the Plan are inserted for convenience of reference only and are not intended to be a part or to affect the interpretation of the Plan.

## THE PLAN CONFIRMATION HEARING

Pursuant to Section 1128 of the Bankruptcy Code, a Confirmation Hearing will be held on **June     , 2024 at     .m. ET**. The Bankruptcy Court may adjourn the Confirmation Hearing from time to time without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

Any objection to confirmation of the Plan must be made in writing and specify in detail the name and address of the objecting party, all grounds for the objection, and the amount of the claim held by the objecting party. Any objection must be filed with the Bankruptcy Court and served so that it is received by the Bankruptcy Court, the U.S. Trustee and Counsel for the Debtor on or before **June     , 2024 by 5:00 p.m.**. Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

Failure by a Creditor or Interest Holder to timely file an objection to the Plan or timely cast a ballot in accordance with the Plan Scheduling Order shall constitute an agreement by silence to accept the terms contained in this Plan. To be counted, a Ballot must be completed as set forth in the instructions on the Ballot, signed, and mailed or otherwise delivered, so as to actually be

received by the Debtor's counsel via mail, electronic mail, facsimile or overnight courier to the Law Offices of Avrum J. Rosen, 38 New Street, Huntington, New York, Fax Number 631-423-4356, arosen@ajrlawny.com or atsionis@ajrlawny.com, on or before 5:00 p.m. ET on May    , 2024.

In the event it is determined that a creditor has a claim secured by a lien on property of the estate, that creditor shall make any election under section 1111(b) of the Bankruptcy Code on or before 5:00 p.m. ET on June    , 2024.

Any interested party desiring further information about the Plan should contact Debtor's Counsel.

**I.**

**BACKGROUND**

A.      **Description and History of the Debtor's Business**

The Debtor had run a successful business whereby it leased the lower level of its Property to a night club and the Debtor hosted a wide array of functions including weddings, birthdays, religious, community and charity events in its upstairs location and its extensive outdoor venue. The Debtor does not have a NYS liquor license and so patrons would use the night club for any portion of a function that required serving alcohol and the Debtor's functions did not serve alcohol.

Originally, the Debtor took over the Property subject to the existing mortgage, which was in default, but subject to a Forbearance Agreement. and took over the prior owner's payments under that Forbearance Agreement. When the prior nightclub lost its liquor license the Debtor fell into default. Then the Covid 19 pandemic occurred and shut down the Debtor's operations. To make matters worse, there was a fire at the Property on August 21, 2022 that severely damaged the outside venue and portions of the interior. The interior damage included extensive water damage from fighting the fire.

Those repairs were covered by insurance but took a long time to complete and the Debtor is still waiting on reimbursement on the last part of the repairs.

The Lender purported to call a default under the Forbearance Agreement, and retroactively asserted default interest back to the date of the initial default by the prior owner and the Debtor also asserts that the Notice of Default was deficient , as a matter of law and did not act to accelerate the loan or to call a default that would lead to the imposition of any default interest. Secondly, the Debtor asserts that the retroactive application of the default interest accrual was improper.

B.      **Events Leading to the Chapter 11 Case**

The filing of the case was precipitated by the entry of a Judgement of Foreclosure and Sale by the Lender and an upcoming foreclosure sale. The Debtor had filed an appeal and was in the process of oral argument on a request for a stay pending appeal when the case was filed.

## EVENTS DURING THE CHAPTER 11 CASE

On June 22, 2023, the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a), 1108 and 1181 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in this case, except that Salvatore LaMonica, Esq. has been appointed as the Subchapter V Trustee.

The Debtor's then-proposed bankruptcy counsel was Karamvir Dahiya, Esq. of the Dahiya Law Offices LLC (the "Dahiya Firm"). On August 10, 2023, the prior counsel erroneously filed an amended voluntary petition for individuals, and elected to proceed under Subchapter V of Chapter 11. On the same day, the Dahiya Firm filed another amended voluntary petition, this time reverting the Debtor's designation back to an ordinary Chapter 11 case.

On August 18, 2023, the Dahiya Firm filed yet another amended voluntary petition again electing to proceed under Subchapter V of Chapter 11. On November 14, 2023, following the Petition Date, this firm (" Firm,") on behalf of the Debtor, filed an application seeking to retain this Firm, as counsel to the Debtor, effective as of November 2, 2023

On December 13, 2023, the Court entered an Order authorizing the Debtor to retain the Firm as counsel to the Debtor, effective as of November 2, 2023, and permitting the Firm to accept from the Debtor a post-petition retainer in the amount of $25,000.00.

The change in counsel was because the Court issued its own Order to Show Cause on November 2, 2023 to either convert or dismiss the case due to multiple deficiencies and defects in the administration of the case. In addition, the Lender had filed a motion for relief from stay on August 1, 2023. On September 20, 2023, just before the 90 day period in which a sub-chapter plan must be filed, a plan was filed. This Plan amends that plan. After multiple hearings on both motions and there still being multiple deficiencies, the Court had directed an adequate protection payment of $20,000.00 by November 9, 2023 and a hearing to convert on November 15, 2023.

This Firm then appeared in the case, filed opposition to both motions. The deficiencies were all cured over the next several weeks and there were agreements for the consensual use of cash collateral and adequate protection payments. A bar date Order was obtained and served. A Retention application for state court appellate counsel was filed, and is pending after the Lender objected to same. An accountant was retained as was a replacement accountant and the Debtor retained an appraiser to appraise the Property for the purposes of this Plan. Mr. Dahiya's firm was retained for the period in which it represented the Debtor but has not yet submitted a fee application. The Debtor will be moving to have that firm disgorge its fees.

This firm has filed an interim fee application and is preparing an Objection to the Lender's proof of claim. The Debtor and the Lender have attempted to come to a consensual Plan with the assistance of the Sub-V Trustee but have not been successful as of yet.

## II.

## ARTICLE II

## DESIGNATION OF CLASSES

**All Holders of Claims and Equity Interests against or in the Debtor, of whatever kind or nature, whether or not scheduled or liquidated, absolute or contingent, whether Allowed or not, shall be bound by the provisions of the Plan and are hereby classified as**

**Class 1:** Class 1 shall consist of the Allowed Secured Claim of the Lender

**Class 2:** Class 2 shall consist of the Allowed Secured Claim of the NYC Department of Finance.

**Class 3:** Class 3 shall consist of the Allowed Secured Claim of the NYC Water Board

**Class 4:** Class 4 shall consist of the Allowed General Unsecured Claims.

**Class 5:** Class 5 shall consist of the Allowed Equity Interests.

**In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims have not been classified and thus are excluded from the Classes.**

**SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1193 OF THE BANKRUPTCY CODE, FEDERAL RULE OF BANKRUPTCY PROCEDURE 3019 AND THIS PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THIS PLAN PRIOR TO ITS EFFECTIVE DATE.**

## IV.

## TREATMENT OF UNCLASSIFIED CLAIMS

As provided in Bankruptcy Code § 1123(a)(1), Administrative Claims, PriorityTax Claims, and Professional Fee Claims are unclassified claims, not considered Impaired and not entitled to vote on the Plan, because they are automatically entitledto the specific treatment provided for them in the Bankruptcy Code. Treatment of these claims is provided below.

**A.      Administrative Claims.** Except to the extent that a Holder of an Allowed Administrative Claim and either the Debtor or Reorganized Debtor, as applicable, agree to less favorable treatment, each Holder of an Allowed Administrative Claim (other than Professional Fee Claims) will, in exchange for full and final satisfaction, settlement, release, and discharge of the

Allowed Administrative Claim, be paid the full, or as otherwise agreed, unpaid amount of such Allowed Administrative Claim in Cash within fourteen days of the Effective Date, provided, however, that Administrative Claims incurred by the Debtor in the ordinary course of business shall be paid in the ordinary course of business in accordance with applicable terms and conditions without further notice to or order of the Bankruptcy Court.

**The estimated amount of Administrative Claims is $50,000.00**

**B.     Professional Fee Claims.** Each Allowed Professional Fee Claim shall be paid in full in Cash on the later of: (a) three days after the Professional Fee Claim is Allowed; and (b) another date on which the holder of the Professional Fee Claim and the Debtor or Reorganized Debtor agree. Each Person seeking an award by the Bankruptcy Court of Professional Fees must file with the Bankruptcy Court and serve on Reorganized Debtor its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by the Professional Fee Bar Date.

**C.     Priority Tax Claims.** Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive the treatment set forth in section 1129(a)(9)(C) of the Bankruptcy Code, with payments over five (5) years with statutory interest. The following Priority Claims have been filed:

Claim No. 2 NYS Department of Taxation and Finance                    $11,357.76

## CLASSIFICATION AND TREATMENT
## OF CLASSIFIED CLAIMS AND INTERESTS

**A.     Classification and Treatment Generally.** Pursuant to sections 1122, 1123, and 1190 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests, which are placed in a particular Class for all purposes under the Plan, including, without limitation, voting, confirmation, and receiving distributions under the Plan, as set forth herein. In accordance with section 1123(a)(1) of the Bankruptcy Code, Claims arising under sections 507(a)(2) or 507(a)(8) of the Bankruptcy Code are not classified and their treatment is set forth in Article IV.

**B.     Classification and Treatment of Classified Claims and Interests.** Classified Claims and Interests are divided into numbered classes as follows:

**Class 1:** Class 1 shall consist of the Allowed Secured Claim of the Lender

**Class 2:** Class 2 shall consist of the Allowed Secured Claim of the NYC Department of Finance.

**Class 3:** Class 3 shall consist of the Allowed Secured Claim of the NYC Water Board

**Class 4:** Class 4 shall consist of the Allowed General Unsecured Claims.

**Class 5:** Class 5 shall consist of the Allowed Equity Interests.

**Class 1: Allowed Secured Claim of the Lender** - The Lender has filed Claim No. 3.1 in the Secured amount of $5,100,000.00 allegedly based upon an appraisal it obtained. The total amount of its claim is $6,342,657.52. That Proof of Claim ignored the secured claim of the NYC Department of Taxation and Finance in the amount of $285,687.06 and the NYC Water Board in the amount of $180,354.21 in determining its secured status. The Debtor has obtained an appraisal that values the Property at $3.450,000.00. As a result, the total amount of Lender's Allowed Claim Secured Claim is $2,983,958.74 ($3,450,000.00- $285,687.06 (NYC Tax)- $180,354.21( NYC Water Board)=$2,983,958.74).

In addition, the Debtor asserts that the Judgment of Foreclosure and Sale (which is under appeal) improperly included default rate interest and that date of alleged default was incorrect. The basis for that assertion is that the Notice of Default was sent by counsel for the Lender and the loan documents required notice from the Lender itself. The Debtor's principal had never dealt with Lender's counsel before receiving the Default Notice and the Lender had never designated Lender's counsel as its agent. As a result, pursuant to New York law, the Default Notice was a nullity, and no Default interest is due. The Debtor asserts that the total amount of Lender's Allowed Claim is $3,839414.06. The Debtor will file a Claim Objection to this Claim.

The Debtor proposes two alternative treatments of the Lender's Allowed Secured Claim. The first treatment is if the Lender does not make a Section 1111(b) election. The Lender's loan will be allowed in the amount of $3,000,000.00, Upon the Effective date, from the New Value contribution from the Debtor's principal there will be a $200,000.00 pay down on that Allowed Secured Claim and the loan of $2,800,000.00 shall be paid over five (5) years at an interest rate of 10% per annum in equal payments of $27,021.00 based upon a twenty year amortization schedule per month, interest only, at which time the full amount of the remaining principal shall become due.

If the Debtor makes a Section 1111(b) election, then the $200,000.00 of the New Value payment will go to reduce the Allowed Secured Claim of the NYC Department of Taxation and Finance, thus reducing the risk of the Lender's claim and the Amount of the allowed claim shall be recast as a mortgage with a ten (10) year Term at 8% per annum, on a twenty year amortization schedule, with the balloon payment ten (10) years from the Effective Date. That would result in a monthly payment of $32,114,00 per month for Ten (10) years.

**Voting:** The Class 1 Claimant is impaired and is entitled to vote on the Plan unless it makes a Section 1111(b) election.

**Class 2: Allowed Secured Claim of The NYC Department of Taxation and Finance:** This Claim is impaired and is entitled to vote on the Plan. This Allowed Secured Claim in the amount of $285,687.06 shall be paid in equal monthly payments of $4,762.00, with statutory interest over five years in equal monthly payments. In the event that Class 1 makes a Section 1111(b) election,

a lump sum payment of $200,000.00 shall be paid on the Effective Date, with the balance paid as set forth above, except the monthly payments will be $1,429.00 per month.

This Class is impaired and is entitled to vote on the plan.

**Class 3:** **Allowed secured Claim of the NYC Water Board-** The Allowed Secured Claim of the NYC Water Board in the amount of $180,354.21, shall be paid in equal monthly payments of $3,006.00 per month for sixty (60) months, plus statutory interest, from the Effective Date.

This Class is impaired and is entitled to vote on the plan.

**Allowed Unsecured Claims** Class 4 Allowed Unsecured Claims shall be paid as follows:

A *pro rata* distribution to all Allowed Unsecured Claims from the sum of $1,000.00 per quarter for five (5) years.

**Voting:** Class 4 is impaired and is entitled to vote on the Plan.

**Class 5: Allowed Equity Claims**

**Voting:** The Class 5 Equity members shall retain their equity in the Reorganized Debtor in exchange for a New Value Contribution in the amount of $250,000.00.

**Voting:** Class 5 Claimants are not impaired and are deemed to accept the Plan

### V.

### ACCEPTANCE OR REJECTION OF THE PLAN

A Class shall have accepted the Plan if it is accepted by at least 2/3 in dollar amount and more than 1/2 in number of the Allowed Claims in such Class (excluding Insiders) that have cast ballots with respect to the Plan. Only those votes cast by holders of Allowed Claims shall be counted in determining whether acceptances have been received in sufficient number and amount to obtain confirmation.

Under this Plan, all Classes except Class 5, are impaired, and are eligible to vote on the Plan. As this is a Sub

### VI.

### MEANS OF IMPLEMENTATION

**A.** **Plan Funding.** All distributions under this Plan will be provided by the Debtor's receipt of funds from operations or from a new cash infusion. As per the Projections to be attached, the Debtor's Plan devotes all of its disposable income for five (5) years to payments under the Plan. In addition, Equity is infusing $250,000.00 into the Debtor to fund these repayments. The Projections are attached to this Plan as Exhibit "B". The latest monthly operating report is attached

hereto as Exhibit "C".

**B.     Continued Reorganized Operations.** The Reorganized Debtor will continue to operate with the primary purpose of continuing to collect revenue and distribute it to all Allowed Claims.

**C.     Plan Distributions.** All payments to Allowed Claims shall be made from the Debtor's receipt of funds as set forth above.

**D.     Corporate Governance.** The Reorganized Debtor will continue to be governed by its members, and the Managing Member shall continue to be George Fisher. On the Effective Date, the Debtor's directors and officers shall remain the directors and officers of the Reorganized Debtor.

**E.     Section 1145 Exemption.** In accordance with section 1145 of the Bankruptcy Code, the retention under the Plan of the Interests is exempt from all federal, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealer in such securities and is not deemed to be a public offer of such securities.

## VII.

## <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

**A.     Assumption and Rejection of Executory Contracts and Unexpired Leases.** Prior to the entry of a Confirmation Order in this case, there shall be entered a Final Order either assuming and/or assigning the Lease or rejecting same.  If the Lease is rejected, the Landlord shall have thirty (30) days to file its lease rejection Claim.   If it is assumed, cure payments shall be made in accordance with the Order or Stipulation authorizing said Assumption or assumption and assignment.  The Debtor hereby assumes the Lease.

To the extent there are any other Executory Contracts, motions to either assume or reject them shall be filed prior to the entry of an order confirming the Plan. If subsequently rejected, any Claim for rejection damages shall be filed within thirty (30) days of the entry of the Final order on said motion.

All assumed Executory Contracts and Unexpired Leases shall remain in full force and effect for the benefit of any assignee, and be enforceable by the assignee in accordance with their terms, notwithstanding any provision in such assumed Executory Contract or Unexpired Lease that prohibits, restricts, orconditions such assumption, assignment, or transfer. Any provision in the assumed Executory Contracts and Unexpired Leases that purports to declare a breach or default based in whole or in part on commencement or continuance of this Chapter 11 Case or any successor cases shall be deemed unenforceable.

**B.     Insurance Policies.** Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor shall assume (and assign to the Reorganized Debtor if necessary to

continue the Insurance Policies in full force) all of the Insurance Policies pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor's foregoing assumption of each of the Insurance Policies.

**C.** **Modifications, Amendments, Supplements, Restatements, or Other Agreements.** Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated pursuant hereunder.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**D.** **Contracts and Leases Entered into After the Petition Date.** Contracts and leases entered into after the Petition Date by the Debtor, and any Executory Contracts and Unexpired Leases assumed by the Debtor, may be performed by the Reorganized Debtor in the ordinary course of business and in accordance with the terms thereof.

**E.** **General Reservation of Rights.** Nothing contained in the Plan shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtor, or any of its affiliates, has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor or the Reorganized Debtor, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

## VIII.

## DISTRIBUTIONS

**A.** **Reorganized Debtor to Make Distributions.** Unless ordered otherwise in the Confirmation Order, the Reorganized Debtor shall make all payments required by this Plan.

**B.** **Method of Payment; Payments, Filings, and Notices Only on Business Days.** Payments of Cash under the Plan must be made by check drawn on a domestic bank or by wire transfer from a domestic bank. Whenever any payment, distribution, filing, delivery, or notice to be made under the Plan is due on a day other than a Business Day, such payment, distribution, filing, delivery, or notice may instead be made, without interest or penalty, on the immediately following Business Day.

**C.** **Undeliverable or Unclaimed Distributions.** Payments required by this Plan, if made by check, shall be mailed to the address set forth in any proof of claim, to the address set

forth in any written notice of address change filed with the Bankruptcy Court or provided to the Debtor or its counsel, or to the address set forth in the Debtor's schedules if no proof of claim has been filed and no written notice of address change has been filed or provided. If any distribution to a Holder of an Allowed Claim is returned to the Reorganized Debtor as undeliverable, no further distributions shall be made to such Holder unless and until the Reorganized Debtor is notified in writing of such Holder's then-current address or other necessary information for delivery within 60 days of the later of (a) the Effective Date and (b) the date of the initial attempted distribution. If such Holder provides the requisite notification, the Reorganized Debtor will, within 30 days of receipt of such information, deliver such undeliverable distribution to the Holder. If such Holder fails to provide information within the 60-day period, such undelivered distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revert to the Reorganized Debtor. Pursuant to Bankruptcy Rule 3010(b), a sub-chapter V debtor does not need to make payments to creditors in an amount less than $15 unless authorized by local rule or court order, So no such distributions shall be made unless such a rule or order is in effect. Notwithstanding anything to the contrary contained in the Plan, nothing in this provision shall act as a bar to entry of a Final Decree or closure of the Chapter 11 Case.

**D.      Time Bar to Cash Payments.** Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not negotiated within 60 days after the date of issuance thereof. Thereafter, the amount represented by such voided check shall irrevocably revert to the Reorganized Debtor free and clear of any restrictions. Any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtor, the Estate, or the Reorganized Debtor.

**E.      Setoff and Recoupment.** From and after the Effective Date, the Reorganized Debtor may, to the extent permitted by section 558 of the Bankruptcy Code or applicable non-bankruptcy law, set off against or recoup from any Claim on which distributions are to be made, any Rights of Action of any nature whatsoever that the Reorganized Debtor may have against the Holder of such Claim; provided, however, that neither the failure to effect such setoff or recoupment nor the Allowance of any Claim shall constitute a waiver or release of any right of setoff or recoupment,  nor of any other Cause of Action.

**F.      No Interest.** No interest shall accrue or be paid on any Unsecured Claim.

**G.      Disputed Claims.** No payment will be made on account of a Disputed Claim unless such claim has been Allowed by final non-appealable order or resolved as provided below. Unless another time is set by order of the Bankruptcy Court, the Reorganized Debtor shall have until the Claim Objection Deadline to file objections to any Disputed Claim. The Claim Objection Deadline may be extended on motion of the Reorganized Debtor for cause, or on consent. For the avoidance of doubt, the Reorganized Debtor shall have the authority to settle and resolve any Disputed Claim on such terms as it deems appropriate without the need for Bankruptcy Court approval.

**H.      Withholding Taxes.** The Reorganized Debtor shall be entitled to deduct any federal, state, or local withholding taxes from any payments made under this Plan. As a condition to making any such payment, the Reorganized Debtor may require that the holder of an Allowed Claim provide its taxpayer identification number and such other information and certification as

may be deemed necessary for it to comply with applicable tax reporting and withholding laws. If any Holder of an Allowed Claim fails to provide such number, information, or certification within 60 days from the date notification of the need for such information is sent to the Holder, such Holder's distribution will be treated as unclaimed property in accordance with Article IX herein, or the amount required to be withheld may be so withheld and turned over to the applicable authority.

## IX.

## ALLOWANCE OF CLAIMS AND INTERESTS

**A.     Disallowance of Claims.** Pursuant to Bankruptcy Code §§ 105 and 502(d), no distributions will be made with respect to Claims that are Disputed or to Claimants from which property is recoverable under Bankruptcy Code §§ 542, 543, 550, 553, 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) (including the Avoidance Actions) until such time as such objection or Rights of Action against that Claimant have been settled or resolved by a Final Order and all sums due to the Debtor are turned over to the Reorganized Debtor. As soon as practicable after the date on which a Claim that is Disputed becomes Allowed, the holder of such newly Allowed Claim will receive all distributions to which it is entitled under the Plan.

**B.     No Distribution Pending Allowance.** Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim. Any person who holds both an Allowed Claim and a Claim that is Disputed will receive the appropriate distribution on the Allowed Claim, but will not receive a distribution on the Claim that is Disputed.

**C.     Allowance of Claims.** Except as expressly provided for in the Plan, no Claim shall be deemed Allowed by virtue of the Plan, Confirmation Order, or any order of the Bankruptcy Court in this Chapter 11 Case, unless and until such Claim is Allowed.

**D.     Late Claims.** Any Claim filed after any applicable Bar Date shall be unenforceable unless the Claimant has been granted an extension of time to file a Claim by the Bankruptcy Court, and such entity shall not be treated as a creditor or Claimant for the purposes of voting or distributions with respect to the Plan. Unless otherwise expressly ordered by the Bankruptcy Court, any such late-filed Claim shall not be entered on the official claims register, shall be deemed Disallowed and expunged and the Claimant shall receive no distribution under the Plan or from the Debtor or Reorganized Debtor.

**E.     Estimation of Claims.** The Debtor or Reorganized Debtor may, at anytime, request that the Bankruptcy Court estimate any contingent or unliquidated General Unsecured Claim pursuant to Bankruptcy Code § 502(c) regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.

**F.     Cumulative Remedies.** All of the aforementioned Claim's objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved as provided herein or by any mechanism approved by the Bankruptcy Court. Until such time as a Claim becomes Allowed, such Claim shall betreated as Disputed for purposes related to allocations and distributions.

**X.**

**EFFECT OF THE PLAN ON
CLAIMS, INTERESTS, AND CAUSES OF ACTION**

**A.     Binding Effect.** On and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against the Debtor who held such Claim at any time during the Chapter 11 Case and its respective successors and assigns, whether or not the Claim of such holder is Impaired under the Plan and whether or not such holder has been deemed to accept the Plan.

**B.     Vesting of Assets.** Except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estate (including Rights of Action, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall vest in the Reorganized Debtor free and clear of all Claims, liens, charges, interests, and encumbrances. As of and following the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims, Interests, or Rights of Action without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.

**C.     Authority to Effectuate Plan.** Upon the entry of the Confirmation Order by the Bankruptcy Court (but subject to the occurrence of the Effective Date), and except as may otherwise be provided herein, any treatment or actions provided for or contemplated under the Plan shall be deemed to be authorized and approved without any further order or approval of the Bankruptcy Court. The Debtor shall be authorized, without further application to or order of the Bankruptcy Court but subject to the terms of the Plan to take whatever action is necessary or proper to consummate and carry out the Plan, to consummate any transaction provided for herein, and to effectuate the distributions provided for hereunder.

**D.     Discharge.** In the event this Plan is confirmed under Bankruptcy Code § 1191(a), as of the Effective Date the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in Bankruptcy Code § 1141(d)(1)(A), except that the Debtor will not be discharged of any debt imposed by this Plan.

In the event this Plan is confirmed under section 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan unless the Bankruptcy Court grants a discharge on completion of all payments due under this Plan, or as otherwise provided in Bankruptcy Code § 1192.

# XI.

## EXCULPATION, INJUNCTION, AND RELATED PROVISIONS

**A.     Exculpation.** The Exculpated Parties shall not have any liability to any holder of a Claim or Interest for any claims arising before, on or after the Petition Date and prior to or on the Effective Date for any act or omission in connection with, related to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence. In all respects, the Exculpated Parties are entitled to rely on the advice of counsel with respect to their duties and responsibilities under the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, discharges, and any other applicable law, Bankruptcy Court order, or rules protecting such Persons from liability.

**B.     Injunction.** Generally, except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim that is unclassified by the Plan or that is classified by Article V of the Plan or that is subject to a distribution under the Plan, are permanently enjoined from taking any of the following actions on account of any such Claims or Interests or rights: (i) commencing or continuing in any manner any action or other proceeding against any property to be distributed under the Plan; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against any property to be distributed under the Plan; (iii) creating, perfecting, or enforcing any lien or encumbrance against any property to be distributed under the Plan; and (iv) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan or the Bankruptcy Code. This injunction shall apply to any third party that is jointly liable with the Debtor on any Allowed Claim to the extent that the Court determines that person made a substantial contribution that meets the standard for such relief under applicable law.

**Nothing in this Plan: (i) extinguishes, prohibits, or otherwise limits the right of any holder of a Claim to assert a right to setoff or recoupment arising in connection with that Claim as part of the resolution and treatment of that Claim under the Plan; (ii) extinguishes, prohibits, or otherwise limits the right of the Estate or Reorganized Debtor to assert and prevail on any Right of Action; (iii) enjoins or otherwise precludes any party-in-interest from enforcing the terms of the Plan and the Confirmation Order except as set forth herein.**

**Following the Effective Date, these injunctions shall remain permanently in full force and effect.**

**C.     Preservation and Application of Insurance.** The provisions of this Plan shall not diminish or impair in any manner the enforceability of coverage of any insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims against the Debtor, any directors, trustees, or officers of the Debtor, or any other Person, including, without limitation, insurance for the Debtor's directors and officers.

**D.     Retention, Reservation, and Prosecution of Rights of Action.** Except as otherwise provided in the Plan, all Rights of Action are retained and reserved for the Reorganized Debtor, which is designated as the Estate's representative under Bankruptcy Code § 1123(b)(3)(B) for purposes of the Rights of Action. The Reorganized Debtor shall have the sole authority to prosecute, defend, compromise, settle, and otherwise deal with any Rights of Action, and does so in its capacity as a representative of the Estate in accordance with Bankruptcy Code § 1123(b)(3)(B). The Reorganized Debtor shall have sole discretion to determine in its business judgment which Rights of Action to pursue, which to settle, and the terms and conditions of those settlements. In pursuing any claim, cause, or Right of Action, the Reorganized Debtor shall be entitled to the extensions provided under section 108 of the Bankruptcy Code. Except as otherwise provided in the Plan, all Rights of Action shall survive confirmation and the commencement or prosecution of Rights of Action shall not be barred or limited by any estoppel, whether judicial, equitable, or otherwise.

## XII.

## CONDITIONS TO OCCURRENCE OF EFFECTIVE DATE

**A.     Conditions to Effectiveness.** The Effective Date does not occur unless and until:

1. The Confirmation Date occurs and the Confirmation Order has been entered and, if appealed, has not been stayed.

2. All instruments and agreements to be issued, entered into, delivered, or filed under the Plan are issued, entered into, delivered, or filed and are effective.

**B.     Waiver of Conditions.** The Debtor may waive any condition to confirmation or the Effective Date, in whole or in part, at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to confirmation and consummation of the Plan.

**C.     Effect of Non-Occurrence of the Effective Date.** If the Effective Date does not occur, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against the Debtor; or (b) constitute an admission, acknowledgement, offer, or undertaking by the Debtor unless contained in a prior Order of this Court. In the event that one or more of the conditions specified in herein shall not have occurred or otherwise not have been waived, (a) the Confirmation Order shall be vacated, (b) the Debtor shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Order were never entered, and (c) the Debtor's obligations with respect to Claims shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtor or any other Person or prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

## XIII.

## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain and have subject matter jurisdiction over any matter arising under the Bankruptcy Code, or arising in, out of, or related to this Chapter 11 Case and the Plan, including jurisdiction to:

**A.** Resolve any matters related to Executory Contracts, including: (i) the assumption, assumption and assignment, or rejection of Executory Contracts or to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine the allowance of Claims resulting therefrom including the amount of Cure, if any, required to be paid; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (iii) any dispute regarding whether a contract or lease is or was executory or expired;

**B.** Adjudicate any and all adversary proceedings, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Case, this Plan, or that were the subject of proceedings before the Bankruptcy Court, prior to the Effective Date, proceedings to adjudicate the allowance of Disputed Claims, and all controversies and issues arising from or relating to any of the foregoing;

**C.** Ensure that distributions to Holders of Allowed Claims are accomplished as provided under this Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

**D.** Hear and determine or resolve any and all matters related to Rights of Action;

**E.** Enter and implement any orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified, and/or vacated;

**F.** Issue and implement orders in aid of execution, implementation, or consummation of this Plan and all contracts, instruments, releases, transactions, and other agreements or documents created in connection with the Plan to the extent authorized by Bankruptcy Code § 1142, including, but not limited to, orders interpreting, enforcing, or clarifying the provisions thereof;

**G.** Consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

**H.** Hear and determine all applications for allowance of compensation and reimbursement of Professional Fee Claims under this Plan or under sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code; determine requests for the payment of Claims entitled to priority under section 507(a)(1) of the Bankruptcy Code, including compensation and reimbursement of expenses of parties entitled thereto; adjudicate, decide, or resolve any and all matters related to sections 1192 and/or 1141 of the Bankruptcy Code;

**I.** Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan and disputes arising in connection with any Person or entity's obligations incurred in connection with the Plan;

**J.** Hear and determine all suits or adversary proceedings to recover assetsof the Debtor and property of its Estate, wherever located;

**K.** Hear and determine any timely objections to Claims, both before and after the Effective Date, including any objections to the classification of any Claim, and to allow, disallow, determine, liquidate, classify, estimate, or establish the priority of, or secured or unsecured status of any Claim, in whole or in part;

**L.** Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

**M.** Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with the consummation or enforcement of the Plan;

**N.** Enforce all orders, judgments, and rulings entered in connection with the Chapter 11 Case and to determine any other matters that may arise in connection with or are related to the Plan and the Confirmation Order;

**O.** Enforce the permanent injunction created by the Confirmation Order and Article XII hereof;

**P.** Hear any other matter not inconsistent with the Bankruptcy Code;

**Q.** Hear and determine all disputes involving the existence, nature, or scope of the Debtor's discharge;

**R.** Issue a final decree and enter an order closing the Chapter 11 Case; and

**S.** Enforce all orders previously entered by the Bankruptcy Court.

**T.** Nothing contained in this Article shall be construed to increase, decrease, or otherwise modify the independence, sovereignty, or jurisdiction of the Bankruptcy Court.

## XIV.

## THE CHAPTER 11 PLAN PROCESS AND CONFIRMATION REQUIREMENTS IN A SUBCHAPTER V CASE

The end game of this Chapter 11 Case is the confirmation of the Debtor's Plan. In order to provide Creditors with sufficient information to analyze the Plan, this document contains a balance sheet analysis, projections, valuations, and a liquidation analysis.

In order for a Bankruptcy Court to confirm the Plan, under Sections 1129, 1190, and 1191 of the Bankruptcy Code, the Bankruptcy Court must:

**i.** *find that the Plan satisfies the "best interest of creditors test"—meaning that creditors will receive more under the Plan than they would get if the Debtor and its assets were liquidated under Chapter 7 of the Bankruptcy Code,*

**ii.** *find that the Plan is "Fair and Equitable"—meaning that the Plan must provide distributions to creditors greater than the liquidation value of the Debtor's Estate and no less than the projected "Disposable Income" of the Debtor, as defined in Section 1191(d) of the Bankruptcy Code over a certain commitment period, and*

**iii.** *find that the Reorganized Debtor will be, or is reasonably likely to be, able to make the payments it promises to make under the Plan.*

### A.    Liquidation Analysis

As part of the Chapter 11 process, section 1129(a)(7) of the Bankruptcy Code requires that a Bankruptcy Court determine that a Chapter 11 plan provides, with respect to each class, that each holder of a claim or an equity interest in such class either (i) has accepted the plan or (ii) will receive under the plan value that is not less than the amount that such holder would receive if the debtor had liquidated under Chapter 7 of the Bankruptcy Code.

The Debtors has obtained a liquidation analysis of the furniture and fixtures, which is annexed hereto as Exhibit " ".  The liquidation value of the Debtor's physical assets is $3,450,000.00.  The asserted secured claims are in excewss of $5,500,000.00.  The Debtor submits that in a chapter 7 liquidation of the Debtor, there would be no funds available for creditors from the liquidation of the Debtor's assets.

There are no Chapter 5 recoveries here because between the Covid 19 Pandemic and the fire at the Property, the Debtor's principal has only put money into the Debtor to keep it viable. For these and other reasons, the Debtor believes that creditors receive far more under the Plan than in a hypothetical Chapter 7 liquidation.

### B.    The Plan Satisfies the "Best Interest of Creditors Test" and is "Fair and Equitable"

This Plan provides for a comprehensive reorganization of the Debtor to preserve its going concern value and future business. Subchapter V contemplates under 1191(c) of the Bankruptcy Code that the Debtor's Plan provides a payout to creditors of all of the Debtor's disposable income over a five (5) year period, which the Court can increase for cause shown up to five (5) years ("Disposable Income").

Sections 1191(c)(2)(A) and (B) of the Bankruptcy Code allow the Debtor to make distributions over a period of three (3) years, which the Court may increase to no more than five (5) years for cause shown under a plan.

Under the Bankruptcy Code, the Debtor can confirm its Plan in one of two ways: (i) on a consensual basis under Sections 1191(a) and 1129(a) of the BankruptcyCode—this requires that the unsecured creditors in Class 2 vote in favor of the Planby at least 2/3 in dollar amount and more than 1/2 in number of the Allowed Claimsin the Class, or (ii) on a non-consensual basis under Section 1191(b) of the BankruptcyCode—under this section the Plan would be confirmed under the "cram down" provisions of the Bankruptcy Code.

In the event that the Plan is confirmed consensually, the Plan is a "pot plan," meaning that funds from the Disposable Income of the Post Confirmation Debtor for the five (5) years after Confirmation, will be available to Holders of General Unsecured Claims, each of whom will receive a pro rata distribution from the "pot". The exact amount will depend primarily on the Claims Resolution process.

In the event the Plan is not consensual the Sub Chapter V Trustee will remain in control of the Debtor's Distribution for five (5)years and the costs of the Sub chapter V Trustee will be costs of the Estate and will reduce the distribution to Allowed Unsecured Claims.

In either case, this will enable the Debtor to satisfy the requirement of Section 1129(a)(7) of the Bankruptcy Code because holders of Allowed General Unsecured Claims who comprise one of the other Impaired Classes of creditors, will receive an amount materially greater than the amount these creditors would be expected to receive in a hypothetical Chapter 7 liquidation.

## <u>ALTERNATIVES TO THE PLAN AND OTHER CONSIDERATIONS</u>

The Debtor believes that the Plan provides creditors with the earliest and greatest possible value that can be realized on their respective Claims. The principal alternatives to confirmation of the Plan are: (i) confirmation of alternative plans submitted by another party in interest; or (ii) conversion of the Case to Chapter 7 of the Bankruptcy Code.

In this case, no other party is permitted to file a plan, as this is a Sub-chapter V case.

The Debtor believes that a conversion to Chapter 7 would not be in the best interest of creditors. As described in section B below (the "<u>Best Interests of Unsecured Creditors</u>"), liquidation of the Debtor's assets under Chapter 7 of the Bankruptcy Code would not generate a greater distribution to creditors than proposed under the Plan. Conversion under Chapter 7 of the Bankruptcy Code would also entail the appointment of a Chapter 7 trustee and the incurrence of additional administrative fees and expenses, which would adversely affect any distributions to Claimants.

The Debtor believes that confirmation of the Plan is preferable to the alternatives described above because the Plan will yield the greatest distributions to holders of Allowed Claims.

# XV.

## RECOMMENDATION OF THE DEBTOR

THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE GREATEST AND EARLIEST POSSIBLE RECOVERY ON ACCOUNT OF CLAIMS AND THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS.

# XVI.

## MISCELLANEOUS

**A.    Effecting Documents; Further Transactions; Timing.** The Debtor and Reorganized Debtor are authorized and directed as of the Effective Date, without further order of the Bankruptcy Court, to execute, deliver, file, or record all contracts, instruments, releases, and other agreements or documents, and to take all actions necessary or appropriate to effect and further evidence the terms of the Plan. All transactions required to occur on the Effective Date under the terms of the Plan are deemed to have occurred simultaneously.

**B.    Governing Law.** Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the laws of the State of New York shall govern the rights and obligations arising under the Plan, without giving effect to principles of conflicts of law of New York.

**C.    Continuing Viability of Other Orders/Agreements.** Except to the extent expressly modified by the Plan, all Final Orders previously entered by the Bankruptcy Court shall continue in full force and effect.

**D.    Exemption from Transfer Taxes.** Under Bankruptcy Code § 1146(a): the issuance, distribution, transfer, and exchange of assets or property of the Estate; (b) the execution, assignment, modification, or recording of any lease or sublease; and (c) the execution, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, the Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to, the foregoing are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, or real estate transfer tax, or other similar tax or governmental assessment and the appropriate state or local government officials or agents are directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**F.    Modification and Amendments.** The Debtor may alter, amend, or modify this Plan under section 1193(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of this Plan as defined in section 1101(2) of the Bankruptcy Code, the Debtor may under section 1193(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile

any inconsistencies in this Plan or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan.

**G.      Revocation, Withdrawal, or Non-Consummation.** The Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Effective Date, which revocation or withdrawal shall occur upon the Debtor's filing of a notice thereof, and to file subsequent chapter 11 plans. If the Debtor revokes or withdraws the Plan, it shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Rights of Action or Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

**H.      Exhibits/Schedules.** All exhibits and schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein. In the event of any inconsistency between the Plan and the exhibits and schedules to the Plan or the Plan Supplement, the terms of the Plan shall control.

**I.      Substantial Consummation.** On the Effective Date, the Plan shall bedeemed to be substantially consummated under sections 1101(2) and 1127(b) of the Bankruptcy Code

**J.      Notices.** After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered on the parties below shallbe served as follows:

<u>If to the Reorganized Debtor:</u>


With a copy (which shall not constitute notice) to:


Avrum J. Rosen, Esq.
Nico G. Pizzo, Esq.
Law Offices of Avrum J. Rosen, PLLC
38 New Street
Huntington, New York 11743
T: 631-423-8567
arosen@ajrlawny.com
npizzo@ajrlawny.com


**K.      Entire Agreement.** Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**L.      Severability.** If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the

terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the Debtor's consent, and (c) nonseverable and mutually dependent.

**M.** **Conflicts.** Except as set forth in the Plan, to the extent that any provision of any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; provided, however, that if there is a conflict between this Plan and a Plan Supplement document, the Plan Supplement document shall govern and control.

Dated:  April 23, 2024
       Huntington, New York

Respectfully submitted,

**Law Offices of Avrum J. Rosen, PLLC**

By:   *s/Avrum J. Rosen*
      Avrum J. Rosen, Esq.
      Alex Tsionis, Esq.
      38 New Street
      Huntington, NY 11743
      (631) 423-8527
      arosen@ajrlawny.com
      atsionis@ajrlawny.com

      *Counsel for the Debtor and*
      *Debtor-In-Possession*

Dated:  New York, New York
       April 23, 2024

**Rachel One Holding Inc.**

By:   *s/ George Fisher*
      George Fisher
      President